IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Crim. No. 12-CR-00190-WY-2 |
| | : | |
| | : | |
| MATTHEW McMANUS, *et al.* | : | |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION OF DEFENDANT MATTHEW McMANUS FOR JUDGMENT OF ACQUITTAL**

Defendant Matthew McManus, through his counsel, respectfully moves this Court for judgment of acquittal on Counts Seventeen Through Nineteen, and Thirty-Two and Thirty-Three; or in the alternative to order a new trial on each count.[1]

The Court should grant the Motion for the reasons explained below.

**LEGAL STANDARD**

**Rule 29 Motion for Judgment of Acquittal**

The standard for deciding a motion for a judgment of acquittal based on the insufficiency of the evidence is familiar: "The verdict must be sustained if there is substantial evidence, taking the view most favorable to the Government, to support it." Glasser v. United States, 315 U.S. 60, 80 (1942). The Third Circuit has characterized that test as follows: the reviewing court must decide "whether, viewing the evidence in the light most favorable to the government, a reasonable mind could find the defendant guilty beyond a reasonable doubt of every element of the offense." United States v.Terselich, 885 F2d 1094, 1097 (3d Cir. 1989).

---

[1] Mr. McManus requests a new trial only as an alternative to the entry of judgment of acquittal, and does not intend to waive his sufficiency challenge (and any objection to retrial on the basis of Burks v. United States, 437 U.S. 1 (1987)) by requesting the alternate relief.

Rule 33 Motion for a New Trial

In contrast, the trial court's role in evaluating a new trial motion is broader than its role of assessing the sufficiency of the evidence. Fed. R. Crim. P. 33. The "interest of justice" is the lynchpin of the court's authority to order a new trial when there is a "serious danger that a miscarriage of justice has occurred – that is, that an innocent person has been convicted." United States v. Johnson, 302 F.3d 139, 150 (3d Cir. 2002) (citations omitted). The trial judge maintains the power to set the verdict aside in the interest of justice even when he believes that he made no errors at trial. United States v. Morales, 902 F.2d 604, 605-06 (7th Cir. 1990) (citations omitted). In service of this broader protective role, a district court evaluating a Rule 33 motion does not view the evidence in the light most favorable to the government, but "instead exercises its own judgment in assessing the government's case." Johnson, 302 F.3d at 150.

## ARGUMENT

**I. The Court Should Enter Judgment Of Acquittal On The Money Laundering Counts; Or In The Alternative, Grant A New Trial.**

Mr. McManus was charged with three counts of money laundering in violation of 18 U.S.C. § 1957, which criminalizes certain monetary transactions in criminally-derived property. Indictment (Doc. No. 1), at 43 (Counts Seventeen-Nineteen).

The term "monetary transaction" means

> the deposit, withdrawal, transfer, or exchange, in or affecting interstate or foreign commerce, of funds or a monetary instrument … by, through, or to a financial institution (as defined in section 1956 of this title), including any transaction that would be a financial transaction under section 1956(c)(4)(B) of this title, but such term does not include any transaction necessary to preserve a person's right to representation as guaranteed by the sixth amendment to the Constitution.

18 U.S.C. § 1957(f)(1) (one citation omitted). One aspect of this definition is crucial for present purposes: a transaction criminalized by §1957 must occur "by, through, or to a financial

institution" (id.), or "involve the use of a financial institution," 18 U.S.C. § 1956(c)(4)(B). Section 1957 uses the definition of "financial institution" that is in § 1956; and § 1956 in turn incorporates the definition that is in the banking code, 31 U.S.C. § 5312(a)(2), and corresponding regulations.

In this case the government elicited numerous references to transfers between Home National and Republic First Banks, but did not introduce the Federal Deposit Insurance Commission ("FDIC") certificate for either bank, and introduced no other evidence from which the jury could have concluded that the bank met the highly-technical statutory and regulatory definition of "financial institution."[2] The government may have been lulled by the fact that § 1956 money laundering (not charged in this case) may be proven *either* with a transaction that affected interstate commerce, *or* a transaction involving a financial institution. 18 U.S.C. § 1956(c)(4)(A & B). Section 1957, in contrast, always requires the government to prove the involvement of a financial institution. 18 U.S.C. § 1957(f)(1). The government's failure to do so here warrants judgment of acquittal, or at a minimum a new trial.

The money laundering convictions on Counts Seventeen and Eighteen must be vacated for another reason as well: the government's proof failed on the interstate commerce element. Counts Seventeen and Eighteen involved the deposit, in June and August 2007, into a Commerce Bank account of checks drawn on a Republic First Bank account. Indictment (Doc. No. 1), at 43; see GX 4001A & B, 4002A &B. The Court instructed the jury that it could find the interstate commerce element established for these counts in one of three ways: the banks were FDIC-

---

[2] The Court correctly instructed the jury that "the term 'monetary transaction" means the deposit, withdrawal, transfer or exchange in or affecting interstate or foreign commerce of funds or a monetary instrument by, through or to a financial institution," but did not further define "financial institution." Tr. of Feb. 19, 2014 at 54:8-11. Thus the jury also lacked an instruction essential to evaluating any such evidence had it been introduced (which it was not).

insured, the source of the funds affected interstate commerce, or the transaction involved an interstate transfer. Tr. of Feb. 19, 2014 at 54:17-55:3.

The record would support none of those findings on Counts Seventeen and Eighteen, however. As to the first possible finding, as noted above the government did not introduce an FDIC certificate for Home National or Republic First Bank; nor did it introduce a certificate for Commerce Bank. As to the second, nothing in the record would permit the jury to identify an interstate source for the funds as to Counts Seventeen and Eighteen, which involved the transfer of funds to Mr. McManus from an account funded by the Philadelphia operation (e.g., Tr. of Jan. 31, 2014 at 236:23-24). And as to the third the record showed that both Commerce Bank and Republic First Bank were located in Philadelphia (Tr. of Jan. 29, 2014 at 232:22-23 (Commerce); e.g., Tr. of Jan. 27, 2014 at 154:20-23 (Republic First). Thus no evidence would support a finding that the transfers at issue in Counts Seventeen and Eighteen affected interstate commerce.[3]

Because the government failed to prove the involvement of a "financial institution" as to all three money laundering counts, and failed to prove the interstate commerce element as to

---

[3] Count Nineteen involved the deposit, in January 2008, into a Commerce Bank account of checks drawn on a Home National Bank account. Indictment (Doc. No. 1), at 43; see GX 4003A & B. At least one witness testified that the Arizona operation was the source of the funds deposited into the Home National Bank account. E.g., Tr. of Jan. 27, 2014 at 155 (testimony of S. Fowler). Thus, the evidence arguably permitted the jury to conclude that the source of the funds transferred had an effect on interstate commerce, for Count Nineteen. Without waiving the legal question of whether the "source of funds" instruction correctly stated the standard for finding an effect on interstate commerce, Mr. McManus does not challenge at this time the sufficiency of the evidence to support that finding. He does note that the evidence would not support a conclusion that the transfer between Home National Bank and Commerce Bank was an interstate transfer, because nothing in the record established that Home National Bank was located in Arizona; the testimony established only that the Arizona operation used Home National Bank (e.g., Tr. of Jan. 30, 2014 at 239:6-8).

Counts Seventeen and Eighteen, the Court should enter judgment of acquittal on Counts Seventeen, Eighteen, and Nineteen. At a minimum, the Court should order a new trial on those counts.

II. **The Court Should Enter Judgment Of Acquittal On The False Statement Count; Or In The Alternative, Grant A New Trial.**

As the Court knows, the Third Circuit held in United States v. Castro, 704 F.3d 125, 139 (3d Cir. 2013), that "literal truth" is a defense to a false statement charge under 18 U.S.C. § 1001. Mr. McManus was charged in Count Thirty-Three with making the false statement that "he was only an independent contractor and never was an owner of Remington." Indictment (Doc. No. 1), at 58. Under Castro, Mr. McManus's conviction must fall unless the government disproved beyond a reasonable doubt the literal truth of that statement; stated positively, the conviction must fall unless the government proved beyond a reasonable doubt that Mr. McManus was an owner of Remington Financial Group ("Remington"), rather than an independent contractor. The government did not do so.

The government introduced no documentation – no stock certificates, operating agreements, corporate minutes, nor the like – evidencing Mr. McManus's purported ownership of Remington. Indeed the only "evidence" of Mr. McManus's ownership status that the government adduced were prior statements by him, and by Mr. Bogdanoff (recounted through other trial witnesses), to that effect.[4] Yet even in the light most favorable to the government, those statements proved nothing more than this: either the declarants subjectively believed that

---

[4] The government also introduced testimony that the accountants from Isdaner & Co. relied upon Mr. Bogdanoff's statements about Mr. McManus's ownership status, but their reliance is not independent evidence of ownership.

5

Mr. McManus was an owner when they made the statements, or they falsely so stated for another purpose.  And under Castro, the defendant's subjective state of mind – whether he believed his statement true or intended to lie – is irrelevant to falsity.[5]  Castro, 704 F.3d at 139.  The question Mr. McManus now raises is whether the government adduced objective evidence that would support a finding that the charged statement was false.  Because no such evidence appears in this record, the Court should enter judgment of acquittal, or in the alternative grant a new trial, on Count Thirty-Three.

The Court should grant a new trial on the false statement count for another reason as well:  "exercis[ing] its own judgment in assessing the government's case," Johnson, 302 F.3d at 150, the Court should acknowledge the import of the evidence that Remington's lawyer had informed Mr. McManus, shortly before the charged statement to the FBI, that the lawyer had recently learned that Remington had never issued shares to Mr. McManus.  See DX 111, 112.  The timing of that advice was perfectly consistent with the rest of the government's evidence concerning Mr. McManus's statements about his ownership of Remington – post-dating his statements claiming ownership, and predating his statements denying it.  And except for a generalized attack on the credibility of the lawyer (and on Mr. McManus himself, of course), the government did not challenge the fact that the very lawyer who was best positioned to know conveyed to Mr. McManus critical information – that Mr. McManus had never been issued shares of Remington – at a critical time.  Nor, of course, did the government produce any documentation contradicting the lawyer's statement.  Weighing the evidence as it sees fit,

---

[5]  The government may rely upon the fact that the defendant made prior inconsistent statements to support the element of knowledge and willfulness, but that is a different element.  Id.

6

Johnson, 302 F.3d at 150, the Court should recognize that the interest of justice requires a new trial, at least, on Count Thirty-Three.

### III.   The Court Should Enter Judgment Of Acquittal On The Obstruction Of Justice Count; Or In The Alternative, Grant A New Trial.

Mr. McManus was charged in Count Thirty-Two with obstructing justice, in violation of 18 U.S.C. § 1505, "by emailing a document to potential witnesses in the investigation titled 'Bluestone FAQ – Responses to Questions re RFG,' containing false information about defendant MCMANUS' role in Remington Financial Group."  Indictment (Doc. No. 1), at 57. The charging language is particularly important here because it imports the requirement of falsity into the obstruction context, where falsity is not a statutory element of the offense.  Thus even though our circuit has not extended the "literal truth" doctrine to the obstruction context, the government's choice to allege a false statement as the obstructive conduct requires the government to prove falsity – and proving falsity is different from proving the subjective intent to lie.  On the obstruction count as on the false statement count, the government proved nothing other than prior inconsistent statements by Mr. McManus and Mr. Bogdanoff.  In the absence of objective evidence of falsity, the obstruction count as charged cannot stand.  Judgment of acquittal, or in the alternative a new trial, is warranted.

Even if the Court were to hold that the obstruction count as charged does not require proof of falsity, however, the obstruction count must be retried for another reason in common with the false statement count:  the statement from Remington's lawyer to Mr. McManus, informing him that he was never an owner. See discussion above, at II.  The lawyer's statement occurred before Mr. McManus issued the "Bluestone FAQ" that was the subject of the obstruction count, and indeed occurred in response to Mr. McManus's circulation of a draft of the "FAQ." See DX 111, 112.  As explained above, the Court should "exercise its own

7

judgment" and give that uncontroverted evidence the weight it deserves.  See Johnson, 302 F.3d at 150.  A new trial, at least, is warranted on Count Thirty-Two.

## **CONCLUSION**

For all of the foregoing reasons, the Court should enter judgment of acquittal, or in the alternative order a new trial, on Counts Seventeen through Nineteen, Thirty-Two and Thirty-Three.

Respectfully submitted,

By: */s/ Lisa A. Mathewson*
Lisa A. Mathewson, Esquire
The Law Offices of Lisa A. Mathewson, LLC
123 South Broad Street, Suite 810
Philadelphia, PA 19109
(215) 399-9592
lam@mathewson-law.com

*Counsel to Defendant Matthew McManus*

Dated: May 19, 2014

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing was served this 19th day of May, 2014, via the Court's Electronic Case Filing ("ECF") system upon the following:

AUSA David L. Axelrod
United States Attorney's Office
615 Chestnut Street, Suite 1250
Philadelphia, PA 19106

Salvatore C. Adamo, Esquire
1434 Knox Avenue, Suite 300
Easton, PA 18040

William T. Cannon, Esquire
William T. Cannon, P.C.
100 S. Broad Street, Suite 1910
Philadelphia, PA 19110

Nialena Caravasos, Esquire
Law Office of Nialena Caravasos LLC
926 Public Ledger Building
620 Chestnut Street
Philadelphia, PA 19106

J. Michael Farrell, Esquire
718 Arch Street, Suite 402N
Philadelphia, PA 19106
Counsel for Aaron Bogdanoff

Paul J. Hetznecker, Esquire
1420 Walnut Street, Suite 911
Philadelphia, Pa 19102

/s/ Lisa A. Mathewson