# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| | : CRIMINAL ACTION |
| v. | : |
| | : |
| MATTHEW McMANUS | : NO. 12-190-2 |

## MEMORANDUM

YOHN, J.                                                                             October 6, 2014

On February 19, 2014, defendant Matthew McManus was convicted by a jury of wire fraud, conspiracy to commit mail and wire fraud, money laundering, obstruction of justice, and making false statements to the federal government for his involvement in an advance fee fraud scheme. After trial, the government moved for a forfeiture money judgment against McManus to deprive him of his ill-gotten gains. McManus opposed, arguing that notice of forfeiture was deficient, that forfeiture would violate the Sixth Amendment, and that joint and several liability should not be imposed. Because I find each of those arguments unavailing, I will grant the government's motion in part and order further briefing to determine the amount to be forfeited.

## I.    BACKGROUND[1]

McManus was the co-owner of Remington Financial Group ("Remington"), which held itself out as a company that could find financing to borrowers seeking loans for commercial projects. Remington offered to connect borrowers to financing, but only if those borrowers paid "advance fees" to receive the promised funds. In reality, Remington failed to secure, or even attempt to secure, financing for almost all of the borrowers who paid these fees. Through this

---

[1] A more detailed recounting of these facts can be found in the memorandum denying McManus's motion for a judgment of acquittal or, in the alternative, a new trial (Doc. No. 331). *See United States v. McManus*, 12-190-2, 2014 WL 4375656 (E.D. Pa. Sept. 2, 2014).

scheme, McManus, his co-owner, and their employees collectively defrauded nearly two thousand victims out of more than $26 million over a period of approximately six years.

On April 26, 2012, a grand jury returned an indictment charging McManus with conspiracy to commit mail and wire fraud (18 U.S.C. § 371), wire fraud (18 U.S.C. § 1343), money laundering (18 U.S.C. § 1957), obstruction of justice (18 U.S.C. § 1505), and making false statements to the federal government (18 U.S.C. § 1001). A fifteen day jury trial commenced on January 23, 2014, and the jury returned a verdict of guilty on all counts on February 19, 2014. McManus filed a motion for judgment of acquittal or, in the alternative, a new trial on May 19, 2014, which I denied on September 2, 2014.

On March 20, 2014, the government moved for entry of a forfeiture money judgment of $26,049,893 against McManus, a sum stated as the amount of property that constitutes or is derived from proceeds traceable to the wire fraud (Counts 4 and 6) and conspiracy to commit mail and wire fraud (Count 1). McManus filed a response in opposition on March 27, 2014. The government replied on April 23, 2014.

## II. DISCUSSION

The government has moved for forfeiture pursuant to 18 U.S.C. § 981 and 28 U.S.C. § 2461. The former statute, concerning civil forfeiture, provides that "property is subject to forfeiture to the United States" where such property "constitutes or is derived from proceeds traceable to a violation of [certain enumerated offenses] or any offense constituting 'specified unlawful activity' . . . or a conspiracy to commit such offense." 18 U.S.C. § 981(a)(1)(C). The latter, in turn, provides:

> If a person is charged in a criminal case with a violation of an Act
> of Congress for which the civil or criminal forfeiture of property is
> authorized, the Government may include notice of the forfeiture in
> the indictment or information pursuant to the Federal Rules of

> Criminal Procedure. If the defendant is convicted of the offense
> giving rise to the forfeiture, the court shall order the forfeiture of
> the property as part of the sentence in the criminal case . . . .

28 U.S.C. § 2461(c). Because "specified unlawful activity" is defined at 18 U.S.C. § 1956(c)(7) to include wire fraud and mail fraud, property that constitutes or is derived from the proceeds of wire fraud or conspiracy to commit mail fraud and wire fraud is therefore subject to forfeiture. *See United States v. Vampire Nation*, 451 F.3d 189, 200 (3d Cir. 2006) ("[W]e read the plain language of § 2461(c), by virtue of the chain of cross-references leading to § 1956(c)(7) and § 1961(1), to explicitly permit criminal forfeiture for general mail fraud . . . .").

McManus does not dispute that forfeiture is available generally upon conviction for wire fraud and related conspiracy. But McManus contends both that the indictment provided deficient notice of forfeiture under Federal Rule of Criminal Procedure 32.2 and that ordering forfeiture would violate the Sixth Amendment under *Apprendi v. New Jersey*, 530 U.S. 466 (2000). McManus further argues that, even if the court finds forfeiture appropriate, joint and several liability should not apply. Finally, McManus disputes the government's calculation of the amount of funds subject to forfeiture.

### A. Notice of Forfeiture

McManus argues first that forfeiture is unavailable in this case because the indictment failed to provide him with accurate notice that such a judgment could be entered upon conviction. For several reasons, that argument is unpersuasive.

A defendant's right to receive notice that the government could seek forfeiture stems from two sources. First, 28 U.S.C. § 2461 provides that "[i]f a person is charged in a criminal case with a violation of an Act of Congress for which the civil or criminal forfeiture of property is authorized, the Government may include notice of the forfeiture in the indictment or

information pursuant to the Federal Rules of Criminal Procedure." 28 U.S.C. § 2461(c). Second, Federal Rule of Criminal Procedure 32.2 commands that "[a] court must not enter a judgment of forfeiture in a criminal proceeding unless the indictment or information contains notice to the defendant that the government will seek the forfeiture of property as part of any sentence in accordance with the applicable statute." Fed. R. Crim. P. 32.2(a).

The government admits that while it now seeks forfeiture under 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), the notice of forfeiture provided to McManus in the indictment instead cited 18 U.S.C. § 982(a)(2) as the applicable statute. *See* Corrected Motion for a Forfeiture Money Judgment (Doc. No. 268) at 2 n.1. According to McManus, that error outright prohibits the court from ordering forfeiture now under § 981. The government responds that McManus had adequate notice despite this incorrect citation.[2]

The government has the better of this argument. Most importantly, McManus makes no showing that he faces unfair surprise at the government's push for forfeiture. *See United States v. Sarbello*, 985 F.2d 716, 721 (3d Cir. 1993) (holding that "absent prejudice to the defendants in light of uncontested *de facto* notice," even a flawed indictment "adequately notified defendants" about possible forfeiture); *cf.* Fed. R. Crim. P. 7(c)(2) ("Unless the defendant was misled and thereby prejudiced, neither an error in a citation nor a citation's omission is a ground to dismiss the indictment or information or to reverse a conviction."). Nor could McManus make such a showing, since the indictment plainly informed him that he faced forfeiture if convicted of wire fraud and related conspiracy. *See* Indictment (Doc. No. 1), at 59 ("As a result of the violations of Title 18, United States Code, Sections 371, 1341, [and] 1343 . . . set forth in this indictment,

---

[2] McManus offers no support for his assertion that citing to 18 U.S.C. § 982(a)(2) was a "strategic pleading choice" by the government. *See* Def.'s Opp'n (Doc. No. 270) at 7. I have treated the citation as erroneous, but that is of little consequence because McManus cannot show prejudice in any event.

4

defendant . . . shall forfeit to the United States of America any property, real or personal, that constitutes or is derived from proceeds traceable to the commission of such offenses.").[3]

Indeed, it is doubtful that this particular error could have prejudiced any similarly situated defendant. The government seeks the proceeds of McManus's wire fraud scheme and related conspiracy under § 981(a)(1)(C), and the incorrectly cited statute, § 982(a)(2), governs forfeiture related to mail and wire fraud—albeit only affecting financial institutions. Therefore, while McManus is correct that § 981 is theoretically a broader forfeiture statute than § 982, concern over substituting one for the other should be allayed where both provisions are being used to target substantially similar conduct—that is, where the defendant would not plausibly have prepared his defense any differently had the error not been made in the first place. I therefore find that McManus received sufficient notice of forfeiture under Rule 32.2.

## B. Amending the Indictment

McManus further asserts that allowing forfeiture under § 981(a)(1)(c) would amount to constructively amending his indictment, as the grand jury cited only to § 982(a)(2) in the notice of forfeiture.[4] The Third Circuit has determined that "[a]n indictment is constructively amended when, in the absence of a formal amendment, the evidence and jury instructions at trial modify essential terms of the charged offense in such a way that there is a substantial likelihood that the

---

[3] This conclusion aligns with several other courts that have deemed citations mistakenly made to § 982 instead of § 981 in notices of forfeiture to be harmless errors. *See United States v. Wall*, 285 F. App'x 675, 683 (11th Cir. 2008) (nonprecedential); *United States v. Silvious*, 512 F.3d 364, 370 (7th Cir. 2008); *United States v. Joel*, 8:11-CR-89-T-23TGW, 2012 WL 2451822 (M.D. Fla. June 27, 2012).

[4] McManus grounds this argument in the Due Process Clause, but the protection against an amended indictment derives from the Fifth Amendment's grand jury guarantee. *See generally Stirone v. United States*, 361 U.S. 212 (1960). The Due Process Clause protects instead against the related concept of a prejudicial variance, discussed *infra*. *See United States v. Daraio*, 445 F.3d 253, 261-62 (3d Cir. 2006) ("[W]e have recognized that 'the variance rule, to the extent that it is constitutionally required, is more of a due process rule than is the flat fifth amendment prohibition against being tried on an indictment which a grand jury never returned.'" (quoting *United States v. Crocker*, 568 F.2d 1049, 1059 (3d Cir. 1977))).

jury may have convicted the defendant for an offense differing from the offense the indictment returned by the grand jury actually charged." *United States v. Daraio*, 445 F.3d 253, 259-60 (3d Cir. 2006). But here, McManus was not charged with violating § 982 and convicted of violating § 981. Rather, the grand jury charged McManus with wire fraud and related conspiracy, the petit jury was instructed on those counts, and the petit jury convicted McManus of those same offenses. That conviction, via a chain of statutory cross-references, automatically made the proceeds of McManus's crimes subject to forfeiture without any further jury findings required. For that reason, I find that allowing forfeiture under § 981(a)(1)(C) and § 2461(c) does not amount to constructively amending McManus's indictment.

Allowing forfeiture would similarly not amount to a prejudicial variance. "There is a variance 'where the charging terms [of the indictment] are unchanged, but the evidence at trial proves facts materially different from those alleged in the indictment.'" *Daraio*, 445 F.3d at 261 (quoting *United States v. Castro*, 776 F.2d 1118, 1121 (3d Cir. 1985)). But "[u]nlike a constructive amendment, a variance can result in a reversible error only if it is likely to have surprised or otherwise has prejudiced the defense." *Id.* at 262. According to the Third Circuit, prejudice will not be found where "the indictment sufficiently informs the defendant of the charges against him so that he may prepare his defense and not be misled or surprised at trial." *Id.* As discussed above, the indictment provided McManus with more than sufficient notice that, should he be convicted of wire fraud and conspiracy, the proceeds of his crimes would be subject to forfeiture. Thus, McManus has not shown that he faces unfair surprise, and without such a showing, there can be no finding of prejudice. I therefore conclude that allowing forfeiture under § 981(a)(1)(C) and § 2461(c) does not amount to a prejudicial variance.

### C. Sixth Amendment

McManus next argues that, under the Sixth Amendment, the court cannot enter a forfeiture money judgment against him without a jury's calculating the exact amount subject to forfeiture. For support, McManus relies on two Supreme Court decisions. In *Apprendi v. New Jersey*, 530 U.S. 466 (2000), the Court handed down what has come to be known as the *Apprendi* rule: that "any fact (other than a prior conviction) that increases the maximum penalty for a crime must be charged in an indictment, submitted to a jury, and proven beyond a reasonable doubt." *Id.* at 476. And in *Southern Union v. United States*, 132 S. Ct. 2344 (2012), the Court extended the *Apprendi* rule to the imposition of criminal fines, concluding that a jury must make any determination that increases the maximum fine a defendant may face. McManus reads those cases as abrogating *sub silentio* the Supreme Court's earlier decision in *Libretti v. United States*, 516 U.S. 29 (1995), which held that "the right to a jury verdict on forfeitability does not fall within the Sixth Amendment's constitutional protection." *Id.* at 367-68. McManus thus urges the court to reject *Libretti* and deny forfeiture in the absence of a jury finding as to the forfeitable amount.

Even if McManus's argument held water on the merits, the Supreme Court has cautioned that "[i]f a precedent of [the Supreme] Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to [the Supreme] Court the prerogative of overruling its own decisions." *Rodriguez de Quijas v. Shearson/Am. Express, Inc.*, 490 U.S. 477, 484 (1989). That command, of course, is equally binding upon the district court. Even more specifically, the Third Circuit has plainly rejected the argument that *Libretti* can be disregarded in light of

*Apprendi*.[5] *See United States v. Leahy*, 438 F.3d 328, 331-33 (3d Cir. 2006) (en banc); *accord United States v. Crews*, 885 F. Supp. 2d 791, 803 (E.D. Pa. 2012). I therefore must, and will, follow the Third Circuit and the Supreme Court. *Libretti* is good law, and I find no Sixth Amendment violation in ordering forfeiture without a jury finding as to the amount in question.

### D. Joint and Several Liability

McManus argues in the alternative that, even if the court orders forfeiture, it should not do so by imposing joint and several liability. The crux of this claim is that the statutes governing forfeiture do not mention joint and several liability—an omission that McManus sees as dispositive. McManus contrasts this omission with the statute on restitution, 18 U.S.C. § 3664, which specifically authorizes joint and several liability. *See* 18 U.S.C. § 3664(h). Thus, McManus urges the court to follow the "general principle of statutory construction that when 'Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.'" *Barnhart v. Sigmon Coal Co.*, 534 U.S. 438, 452 (2002) (internal quotation marks omitted). This argument suffers, however, from the fact that the relevant forfeiture statute, 18 U.S.C. § 981, was passed as part of the Anti-Drug Abuse Act of 1986 (99th Congress), while the referenced restitution statute became law as part of the Victim and Witness Protection Act of 1982 (97th Congress). *See United States v. Granderson*, 511 U.S. 39, 63 (1994) (Kennedy, J., concurring) ("The [*Barnhart*] presumption loses some of its force when the sections in question are dissimilar and scattered at distant points of a lengthy and complex enactment."). The government also correctly notes that the Third Circuit rejected

---

[5] The Second, Fourth, Sixth, Seventh, and Ninth Circuits have likewise continued to follow *Libretti* even after the *Apprendi* rule extended to sentencing. *See United States v. Phillips*, 704 F.3d 754, 769 (9th Cir. 2012); *United States v. Day*, 700 F.3d 713, 733 (4th Cir. 2012); *United States v. Hall*, 411 F.3d 651, 654 (6th Cir. 2005); *United States v. Fruchter*, 411 F.3d 377, 381 (2d Cir. 2005); *United States v. Tedder*, 403 F.3d 836, 841 (7th Cir. 2005).

nearly the same argument in *United States v. Pitt*, holding that § 982 "impos[es] a rule of joint and several liability" even though that forfeiture statute makes no mention of the joint and several liability doctrine, either. *United States v. Pitt*, 193 F.3d 751, 765 (3d Cir. 1999).

Indeed, as the government points out, joint and several liability has been imposed in the forfeiture judgments of several circuits, including the Third Circuit. *See id.* McManus responds that those cases largely dealt with forfeiture under provisions other than § 981,[6] but that is a distinction without a difference: the general notion that "the proceeds of a conspiracy are a debt owed by each of the conspirators" is equally applicable here. *See United States v. Spano*, 421 F.3d 599, 603 (7th Cir. 2005). And though the courts are divided on whether any one co-conspirator should be liable in forfeiture for the total amount of the conspiracy's proceeds or only the amount stemming from conduct reasonably foreseeable to him,[7] in this case—given McManus's supervisory role in the scheme as a co-owner of Remington—those amounts would be identical during the period of time that McManus was involved in the conspiracy. Accordingly, I find that McManus is jointly and severally liable for all proceeds of the advance fee scheme stemming from the wire fraud and related conspiracy for which he was convicted.

### E.     Forfeiture Calculation

McManus has sought permission to submit further briefing as to what the amount of a forfeiture judgment should be in the event that the court finds forfeiture appropriate generally. The government acknowledged and did not oppose that request. *See* Gov.'s Reply (Doc. No. 281) at 2 n.2. Consequently, I will hear argument on October 7, 2014 on the issue and order

---

[6] *But see United States v. Yass*, 636 F. Supp. 2d 1177 (D. Kan. 2009) (imposing joint and several liability in forfeiture under § 981(a)(1)(C) and § 2461(c) upon defendants' conviction for mail fraud and related conspiracy).

[7] *Compare United States v. Spano*, 421 F.3d 599, 603 (7th Cir. 2005) ("It would be absurd to treat [conspirators] more leniently than the law treats a lawful partnership, all of whose members are severally as well as jointly liable for the partnership's debts."), *with United States v. Fruchter*, 411 F.3d 377, 384 (2d Cir. 2005) ("So long as the sentencing court finds by a preponderance of the evidence that the criminal conduct through which the proceeds were made was foreseeable to the defendant, the proceeds should form part of the forfeiture judgment.").

either additional briefing or an evidentiary hearing to aid the court in calculating the correct size of the forfeiture judgment.

## IV.    CONCLUSION

For the foregoing reasons, I will grant the government's motion for a forfeiture money judgment with respect to finding forfeiture appropriate and imposing joint and several liability. I will also allow further briefing or an evidentiary hearing to assist the court in determining the amount subject to forfeiture. An appropriate order will follow.